**Decided June 6, 1989**

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

DIANA C. FERREIRA,                 )        DCA NO. 88-9027
                                   )
        Appellant,                 )
                                   )
        v.                         )        Decision and Order
                                   )
ROSALIA MAFNAS BORJA, et al.       )
                                   )
        Appellee.                  )
_____)

        THIS MATTER came before the Court on June 2, 1989, for hearing of appellees' motion to dismiss this appeal for lack of jurisdiction.    In brief, appellees argue that the Commonwealth Judicial Reorganization Act of 1989, signed into law May 2, 1989, not only divested the Appellate Division of jurisdiction over all appeals filed after the effective date of the Act, but also "pulled back" from this Court to the newly-created Supreme Court all cases which are currently on appeal, including cases where a final opinion has been rendered and filed but in which a mandate has not yet been issued.

        Like other legal issues faced by this Court in the past, this one is complicated by the unique political relationship resulting from the negotiated agreement between the United States and representatives of the people of the Commonwealth of the Northern

Mariana Islands.[1]

A distinction must first be drawn between the power of this Court to decide a particular type of case and the types of cases actually consigned to it for decision. It is undeniably true that the Commonwealth, when negotiating the terms of the Covenant with the United States, retained for itself the right to decide the spectrum of appeals this Court could hear, from none at all to complete jurisdiction to hear all Commonwealth appeals. Covenant section 402(c) affirms that the Appellate Division will have only "such appellate jurisdiction as the Constitution or laws of the Northern Mariana Islands provide." However, the fundamental power of this Court, like that of all district courts, to hear particular types of cases derives from and is exclusively dependent upon an express act by the Congress of the United States. Such decision-making powers as this Court has can only come from the U.S. Congress.[2] By enacting

---

[1] "Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America," P.L. 94-241, 90 Stat. 263 (1978).

[2] This basic precept was recently re-affirmed in Gioda v. Saipan Stevedoring Co. Inc., 855 F.2d 625 (9th Cir. 1988). The Ninth Circuit recognized that the ability of this Court's Appellate Division to entertain appeals could only be altered by U.S. congressional action (as had occurred in Gioda) and that continued jurisdiction in this Court could be justified only because the new federal law worked to deprive the litigants of any functioning alternative forum. Similar considerations guide the Court here. See, infra, pp. 5-6.

48 U.S.C. §1694b[3/] Congress fulfilled its obligation to the people of the CNMI by expressly granting to this Court the additional, extraordinary power to exercise appellate jurisdiction over such matters as the CNMI chose to give it. Therefore, the scope of this Court's appellate jurisdiction has been decided solely by the Commonwealth, but the very ability of this Court to act as an appellate tribunal (and to decide those types of appeals the CNMI has chosen) stems directly---as it must under the United States Constitution---from an Act of the United States Congress. Thus, the Court agrees that the CNMI has the right and power to unilaterally alter or eliminate Appellate Division jurisdiction for all cases in which the notice of appeal is filed on or after May 2, 1989. However, the Court believes that only the U.S. Congress, by legislative enactment, has the power and authority to divest this Court of jurisdiction over those cases in which a notice of appeal had been filed in the Appellate Division prior to May 2, 1989. Stated another way, the unique agreement resulting in this jurisdictional scheme gave the Commonwealth the sole power to "close the door" to the Appellate Division but only an Act of the U.S. Congress can deprive this Court of jurisdiction over those appeals filed here prior to May 2, 1989.

This interpretation finds support in the actions of the two governments. Clearly, the United States and the Commonwealth

---

[3/]  "[T]he district court shall have such appellate jurisdiction...as the Constitution and laws of the Northern Mariana Islands provide....  "48 U.S.C. §1694b(a).  P.L. 94-454, 98 Stat. 1744 (October 5, 1984).

both sought from the beginning to develop a mechanism whereby the CNMI, as part of its evolution towards self-government, could someday establish its own appellate court system. Article IV of the Covenant in a general way outlines the process to be followed. The United States Congress, as part of its obligation to assist in this process, enacted 48 U.S.C. §§ 1694b(c) and 1694c(a). The Court is persuaded that the former was intended to provide for the orderly disposition of appeals pending in the Appellate Division while the latter statute was to be utilized after a local court of appellate jurisdiction had been established and was functioning. These statutes provide a logical, common-sense method to insure an orderly transition while the Appellate Division's caseload dwindles to extinction and the Commonwealth Supreme Court gradually assumes full responsibility for local appeals.

In addition to the analysis adopted above, overwhelming considerations of due process support this decision to retain jurisdiction of all cases pending before this Court prior to May 2, 1989. At least 31 cases are currently before the Court, some of which are at the briefing stage and several others in which a decision has been rendered but no mandate yet issued. Untold hours of time have been spent in preparation of these appeals and the parties have undoubtedly expended significant amounts of money to date. As well, the parties have diligently worked their way through the system, a system in which the rules were clear and known to all, and the procedure predictable and leading ultimately to a final decision. For this Court to relinquish jurisdiction now, even if it

could, would impose a terrible burden on the parties and destroy accepted notions of due process.

This Court, like every court, is charged with certain responsibilities. Among these are the duty to provide and enforce fair rules of procedure, to insure all parties the right to present their cases fully, to provide litigants an impartial forum, untainted by political or personal considerations, and to render decisions in a reasoned manner. This Court, recognizing as it does the staggering due process implications brought about by enactment of the Judicial Reorganization Act, will not shirk its duty to decide those cases presently before it.

The due process problems now facing the courts and litigants stem from the Judicial Reorganization Act. Unfortunately, for reasons which have not been articulated, the Act, unlike other legislation of similar sweep and complexity, was drafted to take effect immediately upon being signed into law. No time interval was provided to allow the new Supreme Court to first become properly organized. Although the many problems which have arisen from this choice were no doubt an unintentional by-product of the legislation, the problems are nonetheless very real and significant.

As of this date, there appears to be no functioning appellate forum in this jurisdiction which has the power to decide appeals filed on or after May 2, 1989. Clearly, the Appellate Division of this Court has no jurisdiction to hear these newly-filed cases. And, by the very terms of the Judicial Reorganization Act, the Commonwealth Supreme Court can undertake no business of any kind

without a full complement of three justices (§3107 of the Act) or before the Chief Justice is able to certify that the Supreme Court is "ready for business," as required by §3108.

This Court recognizes the severe hardships now facing litigants who have sought to file an appeal since May 2, 1989, but is powerless to assist them. Their relief lies in the legislative branch of the Commonwealth government.

To reiterate, this Court simply is unable, without the express direction of the U.S. Congress, to divest itself of jurisdiction over appellate cases filed prior to May 2, 1989, and given to it by the Commonwealth. Further, fundamental due process considerations would prevent this Court from casting the litigants presently before it into the legal abyss created by the uncertainties borne of the enactment of the Judicial Reorganization Act.

Appellees' motion to dismiss for lack of jurisdiction is denied.

IT IS SO ORDERED.

DATED this _____6th_____ day of June, 1989.